# United States Court of Appeals
## For the First Circuit

No. 16-2152

UNITED STATES OF AMERICA,

Appellee,

v.

SANTOS MARTE-DE LA CRUZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Torruella, Thompson, and Kayatta,
Circuit Judges.

Robert Herrick and Nicholson Herrick LLP, on brief for appellant.

Mainon A. Schwartz, Assistant United States Attorney, Rosa Emilia Rodríguez-Vélez, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, on brief for appellee.

December 4, 2017

**KAYATTA**, **Circuit Judge**.  Pursuant to a plea agreement, Santos Marte-de la Cruz pled guilty to attempted illegal reentry into the United States following removal subsequent to a conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(b)(2). He was sentenced to thirty-three months' imprisonment.  He now appeals his conviction and sentence on the basis that his prior conviction was not an aggravated felony or crime of violence. Because Marte-de la Cruz waived his right to appeal as part of his plea agreement, we dismiss his appeal.

## I.  Background

We draw the facts from the parties' agreed-upon statement, attached to the plea agreement.  In January 2016, a United States Coast Guard patrol intercepted a vessel travelling toward Puerto Rico.  Marte-de la Cruz was on board.  He identified himself as a Dominican Republic national and presented no documentation that would permit him to enter the United States or remain therein.  The authorities subsequently learned that in 2010, Marte-de la Cruz had been charged with robbery in the Superior Court of San Juan, Puerto Rico, and sentenced to five years' imprisonment.  Subsequent to that conviction, he was served with an order of removal and on September 24, 2014, he was removed from the United States.

On January 13, 2016, a criminal complaint issued against Marte-de la Cruz.  The same day, counsel was appointed to represent

him.  On May 2, 2016, following Marte-de la Cruz's waiver of his right to an indictment, the United States filed a criminal information, charging Marte-de la Cruz with violating 8 U.S.C. § 1326(b)(2), which criminalizes re-entry or attempted re-entry into the United States by an individual who was previously removed following a conviction for an aggravated felony.  The same day, Marte-de la Cruz filed a plea agreement.

The plea agreement contained the following provisions: First, Marte-de la Cruz agreed to plead guilty to one count of attempted illegal reentry following removal subsequent to a conviction for an aggravated felony, in violation of section 1326(b)(2).  Second, the parties agreed to recommend that Marte-de la Cruz's total offense level be set at nineteen.  They arrived at this figure by starting with a base offense level of eight, adding sixteen levels for the fact that Marte-de la Cruz had been previously removed following a conviction for a crime of violence, and subtracting three levels for acceptance of responsibility and two more levels for participation in a fast-track plea program.  Third, Marte-de la Cruz agreed "that the facts contained in the attached government's version of facts are true and correct, and that had the matter proceeded to trial, the United States would have proven those facts beyond a reasonable doubt." Finally, the agreement stated that Marte-de la Cruz "knowingly and voluntarily waive[d] the right to appeal the judgment and sentence

in this case, provided that [he was] sentenced in accordance with the terms and conditions set forth in the Sentence Recommendation provisions of th[e] Plea Agreement."  The agreement was signed by both Marte-de la Cruz and his attorney, and contained further sworn statements from each of them stating that Marte-de la Cruz's attorney had discussed the plea agreement with him in Spanish, that it had been translated for Marte-de la Cruz, and that Marte-de la Cruz "ha[d] no doubts as to the contents of the agreement."

At his change-of-plea hearing, Marte-de la Cruz again affirmed that the plea agreement and attached document had been translated, that his attorney had explained the documents to him, and that he understood the terms of the agreement and attached document.  The government was asked to describe the essential terms of the agreement, and stated that the parties had agreed to a base offense level of eight and an increase of sixteen levels "because the Defendant was previously removed after a conviction for a crime of violence," accompanied by reductions for acceptance of responsibility and his participation in a fast-track disposition program, for a total offense level of nineteen.  Marte-de la Cruz's attorney was asked if he agreed with the government's representations and Marte-de la Cruz himself was asked if the government had accurately described the agreed-upon sentencing recommendations; both answered in the affirmative.  The magistrate judge also asked: "are you pleading guilty of your own free will

because you are, in fact, guilty?" Again, Marte-de la Cruz responded in the affirmative. Later in the hearing, the magistrate judge stated: "I want to point out to you that . . . your plea agreement[] contain[s] a waiver-of-appeal paragraph, and, in that, you are agreeing to waive your right to appeal both the judgment and the sentence." He then asked if Marte-de la Cruz "voluntarily agree[d] to waive [his] right to appeal both [his] conviction and [his] sentence," and Marte-de la Cruz again responded that he was aware of this waiver and agreed to it. The magistrate judge specifically noted that Marte-de la Cruz had been charged with attempting to enter the United States following removal "subsequent to a conviction for an aggravated felony" and Marte-de la Cruz acknowledged that he was pleading guilty to this specific offense. The magistrate judge then asked the government to state its version of the facts, which included the statement that "background checks . . . reveal[] that . . . Marte-de la Cruz . . . was arrested and charged for robberies, and, on March 24, 2010, he was sentenced to five years imprisonment in the Superior Court of San Juan, . . . making the crime an aggravated felony under the Immigration and Nationality Act." Following this statement, the magistrate judge asked whether Marte-de la Cruz "agree[d] with and admit[ted] to all of the facts the Prosecutor just described." Again, Marte-de la Cruz answered in the affirmative. The magistrate judge recommended that the district

court accept the plea of guilty and the district court accepted the recommendation.

The matter proceeded to sentencing on August 18, 2016. At sentencing, the district court expressed concern about Marte-de la Cruz's prior conduct because his prior conviction "was not only a burglary, but a burglary entering into a house of a lady and pointing a knife at her." The district court was troubled that Marte-de la Cruz had been permitted to take part in the fast-track plea program given his prior conduct, but the government noted that it was aware of the conduct and Marte-de la Cruz's counsel stated "the criminal complaint reflects the fact that the government knew about the robbery conviction -- actually, an aggravated felony." Following this reassurance, the district court sentenced Marte-de la Cruz to thirty-three months' imprisonment. It also told Marte-de la Cruz that "[i]n this particular case, you agreed that if the Court sentenced you to Level 19 you were waiving your right to appeal. And in this case, the Court has sentenced you not only to Level 19, but also to the lower end of 19, which is what the parties specifically agreed."

Four days later, Marte-de la Cruz filed a notice of appeal from his conviction and sentence.

## II. Discussion

Marte-de la Cruz's argument on appeal is that his prior offense was not an aggravated felony or crime of violence, despite

agreement by the parties that it was. Specifically, he argues that he was convicted of second-degree burglary, not robbery, which he contends is not an aggravated felony or crime of violence. He argues that the allegedly erroneous determination that his prior conviction was for robbery resulted in two flaws in his conviction and sentence. First, if his prior offense was not an aggravated felony (and he submits that Puerto Rico burglary is not), then he was not guilty of violating 8 U.S.C. § 1326(b)(2), which only applies to those removed following a conviction for such a felony. Second, if his prior offense was not a crime of violence under the relevant portion of the sentencing guidelines (again, he argues that Puerto Rico burglary is not such a crime), his offense level was inappropriately increased, even if his conviction itself were valid.

By its terms, the express appeal waiver contained in Marte-de la Cruz's plea agreement clearly applies, a point he does not contest. He nonetheless argues that it should not be enforced. We disagree.

Presentence waivers of appellate rights are "presumptively valid (if knowing and voluntary)." United States v. Teeter, 257 F.3d 14, 25 (1st Cir. 2001). Here, there is no doubt that Marte-de la Cruz knew he was waiving his appellate rights and did so voluntarily: "[T]he written plea agreement contains a clear statement elucidating the waiver and delineating

its scope, and . . . the district court inquired specifically at the change-of-plea hearing into any waiver of appellate rights." Sotirion v. United States, 617 F.3d 27, 33 (1st Cir. 2010) (internal quotation marks and alterations omitted). Marte-de la Cruz suggests that "[d]efense counsel's rush to get a plea agreement signed before he ascertained the nature of Marte-de la Cruz's prior conviction casts serious doubt on any suggestion that Marte-de la Cruz's appeal waiver was knowing and voluntary" (internal quotation marks and alterations omitted). But beyond this perfunctory suggestion, he offers no compelling case that there was such a rush, let alone facts sufficient to rebut the strong presumption, supported by the explicit nature of the waiver and the magistrate judge's repeated cautions, that the waiver was knowing and voluntary.

We nonetheless "retain[] inherent power to relieve the defendant of the waiver, albeit on terms that are just to the government, where a miscarriage of justice occurs." Teeter, 257 F.3d at 25–26. We have said that this exception is to be "applied sparingly and without undue generosity." United States v. Gil-Quezada, 445 F.3d 33, 37 (1st Cir. 2006) (quoting Teeter, 257 F.3d at 26). It requires "a strong showing of innocence, unfairness, or the like." Id. In evaluating whether a miscarriage of justice has occurred, "we consider, among other things, the clarity of the alleged error, its character and gravity, its impact on the

defendant, any possible prejudice to the government, and the extent to which the defendant acquiesced in the result." Id. In this case, however, it appears unlikely that error occurred at all.

Marte-de la Cruz's entire case on appeal hinges on his contention that "[t]he parties and, at times, the probation officer labored under the false impression that Marte-de la Cruz's earlier conviction had been for robbery," when in fact, it was for second-degree burglary. The government's version of the facts, the truth of which Marte-de la Cruz expressly agreed to in his plea agreement, stated that Marte-de la Cruz's prior conviction was for robbery and described this robbery as an aggravated felony. At the change-of-plea hearing, the court and the government repeatedly described Marte-de la Cruz's prior offense as robbery. They even specifically described this robbery as an aggravated felony, a characterization which Marte-de la Cruz affirmatively agreed was correct when he acknowledged the truth of the government's version of the facts. And the presentence report (PSR) likewise used the term "robbery" on multiple occasions.

Against all of this, Marte-de la Cruz points to other portions of the PSR, most notably one which describes his conviction as one for "2nd degree burglary," and the district court's use of similar language. However, the same portion of the PSR lists the statute of conviction as Article 199 of the Puerto Rico Penal Code. Article 199 is the aggravated robbery statute

and says nothing about burglary, whatever degree.  See 33 L.P.R.A. § 4827.  The PSR further states, in describing the facts surrounding Marte-de la Cruz's initial conviction, that he had "through the use of violence and/or intimidation, t[aken] property."  This is the language of the Puerto Rico robbery statute, not the burglary statute.  Compare 33 L.P.R.A. § 4826 (entitled "Robbery" and reading "Any person who unlawfully takes personal property belonging to another in the immediate presence of said person and against his/her will by means of force or intimidation shall incur a third degree felony") with 33 L.P.R.A. § 4831 (entitled "Burglary" and reading "Any person who enters a dwelling, building or other construction or structure . . . with the purpose of committing any crime involving unlawful taking or a felony shall incur a misdemeanor").  Thus, far from establishing that Marte-de la Cruz was convicted of burglary, the record actually contains multiple corroborating indications that his conviction was for robbery, as the plea agreement and subsequent court proceedings assumed.  It appears likely that there was no error at all.  In any event, there was certainly no clear and grave error sufficient to constitute a miscarriage of justice.

### III.  Conclusion

Marte-de la Cruz agreed to waive his right to appeal his conviction and sentence in this case, assuming he received a certain sentence.  He received that sentence, triggering the

- 10 -

waiver.  The waiver was made knowingly and voluntarily, and thus is valid.  And he has given us no reason to conclude that enforcing the waiver would work a miscarriage of justice; indeed, the only error of which he complains was likely not error at all. Accordingly, the waiver bars this appeal and the appeal is <u>dismissed</u>.